UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:21-cv-00488-KDB
(3:20-cr-00129-KDB-DCK-1)

| | |
|---|---|
| TERRELL LAMONT IRVING, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | ORDER |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |
| ) | |

**THIS MATTER** is before the Court on Petitioner's Pro Se Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255. [CV Doc. 1].[1]

**I.   BACKGROUND**

In early August 2019, Petitioner Terrell Lamont Irving ("Petitioner") sold an undercover officer (UC1) 14.73 grams of methamphetamine that was later found to be 98% pure. [CR Doc. 27 at ¶¶ 9-10: Presentence Investigation Report (PSR)]. After UC1 greeted Petitioner, Petitioner said, "that's him," and went to another vehicle and returned with the methamphetamine for UC1. [Id. at ¶ 9]. About 10 days later, Petitioner agreed to sell UC1 a half ounce of methamphetamine. [Id. at ¶ 11]. That day, Petitioner arrived in his car, parked next to a red Chrysler 300, walked to the driver's side window of the Chrysler, and then walked to UC1's car, handing over a plastic bag containing 15 grams of methamphetamine. It later tested 99% pure. [Id. at ¶¶ 11-12].

---

[1] Citations to the record herein contain the relevant document number referenced preceded by either the letters "CV," denoting that the document is listed on the docket in the civil case file number 3:21-cv-00488-KDB, or the letters "CR," denoting that the document is listed on the docket in the criminal case file number 3:20-cr-00129-KDB-DCK-1.

At the end of August, Petitioner agreed to meet with UC1 and another person, UC2, to sell them 42 grams of methamphetamine. [Id. at ¶ 13]. At the prearranged location, Petitioner parked next to UC1's car. [Id. at ¶ 14]. UC1 introduced Petitioner to UC2. [Id.]. When the same red Chrysler arrived, Petitioner said that his source was there, referring to the individual driving the red Chrysler. [Id.]. Petitioner went to the red car and returned with a plastic bag containing 43 grams of methamphetamine, which he handed to one of the undercover officers. [Id.]. Petitioner and UC2 discussed future drug deals and exchanged phone numbers. [Id.]. The methamphetamine tested 98% pure. [Id.].

In September 2019, Petitioner sold UC2 actual methamphetamine three times for a total of 179 grams. [Id. at ¶¶ 16-18, 24-27]. Petitioner also sold 11.7 grams of actual methamphetamine to UC1 in September 2019. [Id. at ¶¶ 19-21].

On April 17, 2020, Petitioner was charged in a Bill of Information with methamphetamine trafficking conspiracy involving 50 grams or more of actual methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 846, and 841(b)(1)(A) (Count One); and one count of possession with intent to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B) (Count Two). [CR Doc. 15: Bill of Information]. Petitioner agreed to plead guilty to both charges and that there was a factual basis for the charges. [CR Doc. 16: Plea Agreement; CR Doc. 17: Factual Basis]. The parties agreed to jointly recommend, pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, as follows:

> a. The amount of a methamphetamine (actual), a Schedule II controlled substance, that was known to or reasonably foreseeable by the defendant (including relevant conduct) was at least 150 grams but less than 500 grams for a Base Offense Level of 32.
> …
> c. Notwithstanding any other recommendation herein, if the Court determines from the defendant's criminal history that

> U.S.S.G. § 4B1.1 (Career Offender) applies, such provision may be used in determining the sentence.
>
> d. If the Court determines that the defendant is a Career Offender, the United States will not oppose a sentence at the bottom end of the applicable guidelines range determined by the district court at sentencing. However, if the Court determines at sentencing that the defendant is not a Career Offender, the Government will be free to argue for whatever sentence it believes is appropriate.
>
> e. The parties agree that the Defendant may seek a departure or variance from the "applicable guideline range." (U.S.S.G. § 5C1.1).

[CR Doc. 16 at ¶ 7].

A United States Magistrate Judge accepted Petitioner's guilty plea after conducting a thorough plea colloquy, during which Petitioner was represented by counsel. [See CR Doc. 20: Entry and Acceptance of Guilty Plea]. Petitioner affirmed that he was not under the influence of alcohol or drugs, that his mind was "clear," and that he understood that he was there to plead guilty. [Id. at ¶¶ 6-7]. Petitioner told the Court that he understood his rights, including his right to a jury trial, but that he was guilty of the charges and wanted to plead guilty. [Id. at ¶¶ 20-23, 36]. Petitioner testified that he had spoken with his attorney about how the U.S. Sentencing Guidelines might apply in his case and that he understood that the Court could not determine the applicable guidelines range until after the Presentence Investigation Report (PSR) was prepared. [Id. at ¶¶ 13-14]. The terms of the plea agreement were summarized, and Petitioner affirmed that he understood and agreed with those terms. [Id. at ¶¶ 24-25]. Petitioner affirmed that no one had threatened, intimidated, or forced him to plead guilty and that no one made any promises of leniency or a light sentence to induce him to plead guilty. [Id. at ¶¶ 31-32]. Finally, Petitioner testified that he had had enough time to discuss his case and any potential defenses with his attorney and that he was satisfied with his attorney's services. [Id. at ¶¶ 33-34]. Petitioner's attorney confirmed that she had reviewed the terms of the plea agreement with Petitioner and was

3

satisfied that he understood them. [Id. at ¶ 38]. The Magistrate Judge then accepted Petitioner's guilty plea, finding that it was knowingly and voluntarily made. [Id. at 4].

Before the sentencing hearing, a probation officer prepared a PSR recommending that Petitioner be sentenced at a base offense level of 37 based on his career offender status.[2] [CR Doc. 27 at ¶ 40: PSR]. The probation officer cited convictions on five prior counts of common law robbery and on four prior counts of attempted robbery with a dangerous weapon. [Id. (citing U.S.S.G. §4A1.2, comment. n. 3, §4B1.1(b)(1))]. With a three-level reduction for acceptance of responsibility, Petitioner's total offense level was 34. [Id. at ¶¶ 41-43]. With a criminal history category of VI, the guidelines advised a sentencing range of 262 to 327 months' imprisonment. [Id. at ¶¶ 58, 87]. The probation officer also provided Petitioner's mental and emotional health history, which included intermittent mental health treatment for bipolar disorder, manic depression, panic attacks, and Post-Traumatic Stress Disorder (PTSD) and diagnoses of antisocial personality traits and bipolar disorder. [Id. at ¶¶ 75-76]. Petitioner filed objections to the PSR, noting that he would be seeking a downward departure or variance and objecting to certain conditions of supervised release. [CR Doc. 26: Defendant's Objections to PSR].

At sentencing, the Court adopted the PSR without change. [CR Doc. 31: Statement of Reasons]. The Court sentenced Petitioner to a term of imprisonment of 262 months on each count with the sentences to run concurrently. [CR Doc. 30 at 2: Judgment]. The Court explained that it imposed this sentence because Petitioner had "a long and violent criminal history," that he had "earned" his career offender status, and that Petitioner had not been deterred by previous terms of

---

[2] Under U.S.S.G. §4B1.1(b), a defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

4

imprisonment. [CR Doc. 31 at 2]. As an additional term of supervised release, the Court required Petitioner to "participate in a mental health evaluation and treatment program." [Doc. 30 at 4]. Petitioner did not appeal.

On September 14, 2021, Petitioner timely filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. [CV Doc. 1]. Petitioner argues that his counsel was ineffective (1) for not moving for an evaluation of Petitioner's mental competency "to with-stand proceedings;" (2) for not challenging Petitioner's conspiracy charge even though no co-conspirators were charged; (3) for not challenging Petitioner's career offender status or criminal history points; and (4) for not requesting a downward departure on the grounds of "sentencing manipulation" and "sentencing entrapment." [CV Doc. 1 at 4-5, 7-8; see CV Doc. 1-1]. The Government responded [CV Doc. 3] and Petitioner filed an untimely reply[3] [CV Doc. 4].

## II. STANDARD OF REVIEW

A federal prisoner claiming that his "sentence was imposed in violation of the Constitution or the laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a).

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior

---

[3] Petitioner also subsequently filed an unauthorized supplement to his § 2255 motion to vacate in which he presents additional facts and arguments in support of his career offender claim. [CV Doc. 5]. The Court disregards this untimely and unauthorized pleading, particularly where Petitioner failed to move for additional time to reply to the Government's response in the first instance.

proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. After examining the record in this matter, the Court finds that the arguments presented by Petitioner can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

### III. DISCUSSION

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. Const. amend. VI. To show ineffective assistance of counsel, Petitioner must first establish a deficient performance by counsel and, second, that the deficient performance prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). In making this determination, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689; see also United States v. Luck, 611 F.3d 183, 186 (4th Cir. 2010). Furthermore, in considering the prejudice prong of the analysis, the Court "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)). Under these circumstances, the petitioner "bears the burden of affirmatively proving prejudice." Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008). If the petitioner fails to meet this burden, a "reviewing court need not even consider the performance prong." United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), opinion vacated on other grounds, 218 F.3d 310 (4th Cir. 2000).

To establish prejudice in the context of a guilty plea, a petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Meyer v. Branker, 506 F.3d 358, 369 (4th Cir. 2007) (quoting Hill

v. Lockhart, 474 U.S. 52, 59 (1985)). Further, a petitioner must show that proceeding to trial would have been objectively reasonable. See United States v. Fugit, 703 F.3d 248, 260 (4th Cir. 2012). In evaluating such a claim, statements made by a defendant under oath at the plea hearing carry a "strong presumption of verity" and present a "formidable barrier" to subsequent collateral attacks. Blackledge v. Allison, 431 U.S. 63, 73-74 (1977). Indeed, "in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should dismiss . . . any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." United States v. Lemaster, 403 F.3d 216, 221-22 (4th Cir. 2005).

When a defendant pleads guilty, he waives all nonjurisdictional defects in the proceedings conducted prior to entry of the plea." United States v. Moussaoui, 591 F.3d 263, 279 (4th Cir. 2010). Thus, a knowing and voluntary guilty plea "forecloses federal collateral review" of prior constitutional deprivations, including allegations of ineffective assistance of counsel that do not affect the voluntariness of the plea. See Fields v. Att'y Gen. of Md., 956 F.2d 1290, 1294-96 (4th Cir. 1992); accord United States v. Torres, 129 F.3d 710, 715 (2d Cir. 1997); Wilson v. United States, 962 F.2d 996, 997 (11th Cir. 1992); Smith v. Estelle, 711 F.2d 677, 682 (5th Cir. 1983). A guilty plea is valid when it "represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." Burket v. Angelone, 208 F.3d 172, 190 (4th Cir. 2000) (citing North Carolina v. Alford, 400 U.S. 25, 31 (1970)).

When the ineffective assistance claim relates to a sentencing issue, the petitioner must demonstrate a "'reasonable probability' that his sentence would have been more lenient" but for counsel's error. Royal v. Taylor, 188 F.3d 239, 249 (4th Cir. 1999) (quoting Strickland, 466 U.S. at 694)). If the petitioner fails to meet this burden, the "reviewing court need not even consider

7

the performance prong." United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), opinion vacated on other grounds, 218 F.3d 310 (4th Cir. 2000).

### A. Conspiracy Charge

Petitioner argues that his counsel was ineffective for not challenging Petitioner's conspiracy charge where he was the only person charged in the Information and, therefore, actually innocent of conspiracy. [CV Doc. 1 at 5; CV Doc. 1-1 at 3]. Specifically, Petitioner contends that he never implicated anyone else in the conspiracy and the only potential co-conspirator, Antonio Javier Landers, was a Government informant who could not legally be a party to a conspiracy. [CV Doc. 1-1 at 7-9]. This claim has been waived and is meritless.

As noted, when a defendant pleads guilty, he waives all nonjurisdictional defects in the proceedings conducted prior to entry of the plea, Moussaoui, 591 F.3d at 279, and a knowing and voluntary guilty plea "forecloses federal collateral review" of prior constitutional deprivations, see Fields, 956 F.2d at 1294-96. Here, Petitioner does not challenge the voluntariness of his guilty plea. And he knew the nature of the charges when he pleaded guilty. As such, he has waived this claim.

Moreover, even if not waived, it is without merit. The identity of a co-conspirator is not a necessary element of a conspiracy offense. See Rogers v. United States, 340 U.S. 367, 375 (1951) ("[A]t least two persons are required to constitute a conspiracy, but the identity of the other members of the conspiracy is not needed…."). While Petitioner is correct that a government agent cannot be a co-conspirator, U.S. v. Chase, 372 F.2d 453, 459 (4th Cir. 1967), the evidence here showed that Petitioner, if nothing else, conspired with the driver of the red Chrysler 300, the person who was consistently witnessed to be Petitioner's supplier. As such, Petitioner's attorney was not ineffective for failure to challenge the conspiracy charge and the Court will dismiss it.

8

### B. Mental Competency

"The standard for competence to plead guilty is the same as that for competence to stand trial: whether the defendant 'has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him." Moussaoui, 591 F.3d at 291 (quoting Dusky v. United States, 362 U.S. 402, 402 (1960)). "Not every manifestation of mental illness demonstrates incompetence to stand trial…." Burket v. Angelone, 208 F.3d 172, 192 (4th Cir. 2000) (quotation marks and citation omitted). Thus, a motion to determine competency should only be granted "if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent" to understand the nature of the proceedings against him or "to assist properly in his defense." 18 U.S.C. § 4241(a).

Petitioner contends that his attorney was ineffective for failing to request a mental health evaluation and for refusing to file a motion for downward departure based on Petitioner's mental health status. [CV Doc. 1 at 8; CV Doc. 1-1 at 3]. Petitioner states that he had previously had a "near mental breakdown" after losing his job and was diagnosed with bipolar disorder and PTSD. Petitioner claims that his attorney "did not know how to argue [his] mental health status" and "thought it would hurt [him] to present [too] much." [CV Doc. 1-1 at 12]. Petitioner, however, does not claim that he was incompetent to proceed or seek to set aside his guilty plea. Absent such allegations, he cannot show either deficient performance or prejudice. See Strickland, 466 U.S. at 687-88, 694; see also United States v. Dyess, 730 F.3d 354, 359-60 (4th Cir. 2013) (holding it is proper to dismiss vague and conclusory allegations).

The record also lacks any evidence showing that Petitioner suffered from a mental disease or defect "rendering him … unable to understand the nature and consequences of the proceedings

9

against him or to assist properly in his defense," warranting a motion to determine his competency. See 18 U.S.C. § 4241(a). Rather, the record of the guilty plea hearing shows that Petitioner answered the questions appropriately, that he testified that his mind was clear, and that he understood the proceedings. [CR Doc. 20]. Petitioner's attorney affirmed that she had reviewed the plea agreement with Petitioner and was satisfied that he understood it. [Id. at ¶ 38]. And the Magistrate Judge determined that Petitioner's guilty plea was knowing and voluntary. [Id. at 4]. As such, counsel's decision not to seek a competency evaluation was within the bounds of reasonable professional judgment.

Petitioner has also failed to show that his attorney should have moved for a downward departure based on Petitioner's mental health status. Such a departure is only warranted where mental and emotional conditions are "present to such a degree and distinguish the case from the typical cases covered by the guidelines." U.S.S.G. §5H1.3. Petitioner concedes that his attorney obtained Petitioner's prior mental health records, [CV Doc. 1 at 8], and Petitioner has not shown prejudice where the Court was informed of his mental health issues [see CR Doc. 24 at ¶¶ 75-76]. The Court recognized these issues and imposed mental health evaluation and treatment as an additional condition of supervised release. [CR Doc. 30 at 4]. Nonetheless, the Court determined that Petitioner had earned career offender status, noted that Petitioner had a long and violent criminal history, and determined that a within guidelines sentence was appropriate. [CR Doc. 31 at 2]. Petitioner, therefore, has failed to show, under these circumstances, a reasonable probability that he would have received a lower sentence had his counsel moved for a downward departure or variance based on his mental health. See Royal, 188 F.3d at 249. The Court will dismiss this claim.

    **C.**    **Criminal History Points and Career Offender Enhancement**

10

Case 3:20-cr-00129-KDB-DCK   Document 40   Filed 01/31/22   Page 10 of 15

Petitioner contends that his attorney was ineffective for failing to challenge Petitioner's criminal history points and career offender status. To succeed on this claim, Petitioner must show a "'reasonable probability' that his sentence would have been more lenient" but for counsel's error. Royal, 188 F.3d at 249 (quoting Strickland, 466 U.S. at 694). Without such prejudice, the Court need not consider the performance prong. Rhynes, 196 F.3d at 232. Petitioner has not shown deficient performance or prejudice because the probation officer correctly scored Petitioner's criminal history points and properly designated Petitioner as a career offender.

The probation officer treated Petitioner's three 2003 common law robbery convictions as consolidated – and did not award him any criminal history points for those convictions – because they were imposed at the same time he was sentenced for indecent liberties with a child. [CR Doc. 27 at ¶¶ 46-47]. The probation officer, however, did award three points for the indecent liberties offense because Petitioner's probation was revoked, and he was sentenced to 16 to 20 months of imprisonment. [Id. at ¶ 46; U.S.S.G. §4A1.2(d)(1), (k)(1)]. On January 19, 2006, Petitioner was arrested on two charges of attempted robbery with a dangerous weapon, [Id. at ¶ 53], and then six days later on two charges of common law robbery and two more charges of attempted robbery with a dangerous weapon, [Id. at ¶ 54]. All these offenses were committed on the same day and Petitioner was sentenced for each offense on the same day. The 94- to 122-month sentence for the four attempted robbery with a dangerous weapon convictions, which were consolidated, ran consecutively to the 16- to 20-month sentence imposed for his common law robbery offenses. [Id. at ¶¶ 53-54]. No points were assigned for the attempted robbery with a dangerous weapon counts that were consolidated with the other two such counts. [Id. at ¶ 53; see U.S.S.G. § 4A1.2(a)(2)], and four points were properly assigned for offenses charged on January 25, 2006 [Id. at ¶ 54].

Finally, Petitioner challenges the two criminal history points assigned for his six-month sentence for resisting an extradition agent. [See id. at ¶ 55]. Petitioner served more than 60 days for that offense and, thus, two points were properly scored. U.S.S.G. §4A1.1(b). Because Petitioner's criminal history points were properly scored, he cannot show deficient performance or prejudice on this issue and it will be dismissed. See Royal, 188 F.3d at 249.

Petitioner also argues that his attorney should have challenged his career offender enhancement because he did not have two qualifying predicate offenses. [CV Doc. 1-1 at 7]. Petitioner argues that his 2003 common law robberies should not have been counted as predicate convictions because they were part of a consolidated sentence and he did not receive any points for them. [See CV Doc. 1 at 4; CV Doc. 1-1]. Petitioner misunderstands the guidelines.

Petitioner was found to be a career offender because he was 18 years old when he committed the instant offense, the offense was a felony controlled substance offense, and he had at least two prior convictions of either a crime of violence or a controlled substance offense. U.S.S.G. §4B1.1(a). When determining predicate offenses under the career offender guideline, "a prior sentence included in the single sentence should be treated as if it received criminal history points, if it independently would have received criminal history points." U.S.S.G. §4A1.2, comment. n.3(A). Because the 2003 common law robbery convictions would have received criminal history points had Petitioner not been simultaneously sentenced on the indecent liberties with a child offense, the probation officer properly included them as a career offender predicate. Thus, with this predicate and the 2008 convictions, the career offender enhancement was warranted and proper. Petitioner has, therefore, failed to show deficient performance or prejudice from any failure to object to his career offender enhancement. See Royal, 188 F.3d at 249. The Court will also dismiss this claim.

D.     **Sentencing Manipulation and Entrapment**

Petitioner claims that his counsel was ineffective because she did not argue for a more favorable sentence on the grounds of sentencing manipulation or sentencing entrapment. [CV Doc. 1-1 at 9-11]. Petitioner argues that UC1 asked for only 14 grams of methamphetamine in each of UC1's transactions with Plaintiff, which collectively was above the 500 mg actual methamphetamine threshold needed to charge Petitioner federally. [CV Doc. 1-1 at 9-10]. Despite having a sufficient drug quantity to charge Petitioner and knowing that Petitioner "was striving to stop selling drugs," the Government introduced UC2, who asked for one ounce of methamphetamine.[4] [Id. at 9, 10].

The Fourth Circuit, without acknowledging the validity of either claim, has distinguished "sentencing entrapment" from "sentencing manipulation." United States v. Jones, 18 F.3d 1145, 1152-53 (4th Cir. 1994). Sentencing entrapment requires a showing of lack of predisposition, id. at 1153, while sentencing manipulation, by contrast, requires no showing of lack of predisposition, but rather is a "sentencing analog" of the "outrageous government conduct" defense, United States v. Hall, 23 F.3d 403, at *2 (4th Cir. 1994) (Table) (citing Jones, 18 F.3d at 1153).

The Fourth Circuit has not adopted "sentencing entrapment" as a legally viable theory. Jones, 18 F.3d at 1154; see United States v. Young, 818 Fed. App'x 185, 196 (4th Cir. 2020) (assuming without deciding that sentencing entrapment is a viable legal theory and rejecting its application under the facts there). "Sentencing manipulation," to the extent it has any basis in law, is also viewed with skepticism. Jones, 18 F.3d at 1154 ("We … note our skepticism as to whether the government could ever engage in conduct not outrageous enough so as to violate due process

---

[4] The Court notes that Petitioner's factual recitation relative to this issue only partially corresponds to that presented in the PSR. The Court accepts Petitioner's version here only for the purposes of addressing this claim.

to an extent warranting dismissal of the government's prosecution, yet outrageous enough to offend due process to an extent warranting a downward departure with respect to a defendant's sentencing.").

Whether these theories are accepted as grounds for lower sentences, the facts here do not support their application. Plaintiff actively and willfully engaged in the transactions here and evinced no objective lack of predisposition necessary to support sentencing entrapment. Moreover, there is no basis for any claim of "outrageous government conduct" as might sustain a claim of sentencing manipulation. As such, Petitioner's attorney's failure to raise these theories in mitigation of Petitioner's sentence was not ineffective assistance and this claim will be dismissed.

In sum, Petitioner has shown neither deficient performance nor prejudice relative to any of the grounds he asserts in support of his claims for ineffective assistance of counsel and they will be dismissed. See Strickland, 466 U.S. at 687-88, 694; Royal, 188 F.3d at 249.

## IV. CONCLUSION

For the foregoing reasons, the Court denies and dismisses Petitioner's § 2255 motion to vacate.

**IT IS, THEREFORE, ORDERED** that:

1. Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 [Doc.1] is **DENIED** and **DISMISSED**.

2. **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is

denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

Signed: January 31, 2022

Kenneth D. Bell
United States District Judge